### DIXIE PINE PRODUCTS CO., Inc., v. BOWLES.

### No. 11655.

Circuit Court of Appeals, Fifth Circuit.

Feb. 15, 1947.

T. J. Wills, of Hattiesburg, Miss., for appellant.

Milton Klein, Director, Litigation Div., OPA, and David London, Chief, Appellate Branch, OPA, both of Washington, D. C., and Leanora S. Gruber, Sp. Appellate Atty., OPA, of New York City, for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellant, defendant below, owns and operates a wood reduction plant and a sawmill located two miles south of Hattiesburg, Mississippi, within the Hattiesburg Defense Rental Area. For the accommodation of labor necessary to plant operations, it constructed sixty-two dwelling houses on its premises, to be rented only to plant employees. The rents charged are less than 25% of the charges made for like housing and are intended to take care of taxes, insurance, and upkeep. When appellant failed to register the housing units with the Hattiesburg Defense Rental Area office, the Price Administrator sought and obtained a judgment (1) directing the defendant "to immediately and forthwith register any and all rental units

or housing accommodations rented or offered for rent as a dwelling place or for residential purposes as defined under the rent regulation for housing * * * with the Hattiesburg, Mississippi, Defense Rental Area Office"; and (2) restraining and enjoining defendant "from violating the provisions of the aforesaid re~ulation for housing or any of the provisions of any price control laws of the United States of America."

Appellant, appealing from that judgment, here contends that its dwelling houses are the type exempted by the rent regulation; hence, the regulation is not applicable.

The pertinent part of Section 1 of the rent regulation for housing provides: "This regulation applies to all housing accommodations within each of the defense-rental areas and each of the portions of the defense-rental area * * *."

Section 13(a) (6) of the regulation defines "housing accommodations" as: "* * * any building, structure, or part thereof or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes * * *."

Rent is defined in Section 13(a) (10) as: "* * * the consideration, including any bonus, benefit, or gratuity, demanded or received for or in connection with the use or occupancy of housing accommodations."

▋ In its answer, appellant specifically alleged that "employees now employed have been and are now being furnished housing accommodation for which a small rental is charged." Economic considerations were accountable for the small rental. Such considerations, however, would not affect the status of appellant's dwelling houses: they were nonetheless "housing accommodations" within the meaning of the regulation. Bibb Manufacturing Co. v. Bowles, Em.App., 140 F.2d 459; Adams, Rowe & Norman, Inc., v. Bowles, Em.App., 144 F.2d 357.

▋ Appellant relies on Section 1(b) which exempts housing rented to service employees. The pertinent part of Section 1(b) reads:

"*Housing to which this regulation does not apply.* This regulation does not apply to the following:

\* \* \* \* \*

"(2) *Service employees.* Dwelling space occupied by domestic servants, caretakers, managers, or other employees to whom the space is provided as part or all of their compensation *and who are employed for the purpose of rendering services in connection with the premises of which the dwelling space is a part.*" [Emphasis added.]

Appellant's employees render services in connection with the operation of the wood reduction plant and sawmill. They are not employed for the purpose of rendering services in connection with the dwelling houses.* This is made cl^ar by

---

* The official interpretation of Section 1 (b) (2) furnishes the following illustrations:

"1. L operates an apartment building and employs T as manager. He pays T $200 a month for his services and also provides T with an apartment in the building, for which T pays no rent.

"The exemption contained in Section 1 (b) (2) of the housing Regulation applies and the apartment occupied by T is not subject to the Rent Regulation. T is employed for the purpose of rendering services in connection with the premises of which the apartment unit is a part, and that unit is provided him as part of his compensation.

"2. Assume in the above case that L pays T $250 a month for his services as manager and T in turn pays $50 a month rent for the apartment which he occupies. •

"The exemption contained in Section 1 (b) (2) applies and the renting of the apartment occupied by T is not subject· to the Regulation. The substantial effect of this arrangement is the same as that described in paragraph 1 and the same rule applies. If L and T had arrived at the amount of T's salary by deducting the rent for the apartment, and agreed therefore on a salary of $200 a month plus 'rent-free' occupancy of the apartment, the exemption clearly would apply. The fact that the arrangement between L and T provides for payment of rent does not affect the exemption, provided the rent is less in amount than the wages received so that the substantial result is a supplying of dwelling space plus a payment of wages."

the affidavit by the president, vice-president, and secretary-treasurer of the defendant corporation, in which it is stated that the employees were hired for work at the plant and mill, and that, when it was found that there were no dwelling houses or accommodations for the employees to live in, the company, from necessity, built houses.

We think it clear that appellant's dwelling houses were not occupied by "service employees" within the meaning of the exemption.

The judgment appealed from is affirmed.